UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LORRAINE FORCIER, Administratrix )
of the Estate of Darren Forcier, )
    Plaintiff/Counterclaim Defendant )
) C.A. No. 04-CV-40158-FDS
v. )
)
DORIS FORCIER, )
    Defendant/Counterclaim Plaintiff )

The decedent's mother, Lorraine Forcier, Administratrix of the Estate of Darren Forcier, respectfully submits this memorandum in support of her Complaint for Declaratory Judgment.

STATEMENT OF ISSUES PRESENTED

1. Whether the court should order that the decedent's life insurance proceeds be payable to the Estate of Darren Forcier or to the decedent's spouse.

2. Whether the Employee Retirement Income Security Act preempts Massachusetts common law on which petitioner relies relative to the enforcement of a Separation Agreement representing a final settlement of the parties' financial relationship that has been held to be enforceable by the Worcester Probate and Family Court, even though the parties' divorce action was abated upon the decedent's death.

STATEMENT OF FACTS

The decedent, Darren Forcier, (hereinafter "Darren") and his wife, Doris Forcier, (hereinafter "Doris") were married on May 20, 2000. There were no children born of the marriage. On April 22, 2002, Doris filed a Complaint for Divorce in the Worcester Probate and Family Court (hereinafter "Family Court") alleging an irretrievable breakdown of the marriage beginning on May 27, 2000. See Exhibit A attached to the Stipulation of Facts. On July 2, 2003

1

Darren and Doris entered into a Separation Agreement (hereinafter "Agreement") which detailed a comprehensive and final settlement of the parties' financial relationship. See Exhibit C attached to the Stipulation of Facts. The Agreement was approved by the Family Court on October 6, 2003. It was incorporated into a Judgment of Divorce Nisi but survived independent of the Judgment. See Exhibit D attached to the Stipulation of Facts. The Family Court found that the Agreement was fair and reasonable, that the parties accepted the Agreement as a full and final division of marital assets and, that the Agreement made proper provisions for support and maintenance, alimony and disposition of marital property. On October 27, 2003 Darren was found dead in his home. At the time of his death Darren was employed by Macromedia Incorporated. As an incident of his employment, Darren had a life insurance policy with Metropolitan Life Insurance Company (hereinafter "MetLife"), including death benefits of Two Hundred Eight Thousand ($208,000.00) Dollars as part of the Macromedia Employee Benefit Plan. See Exhibit F attached to the Stipulation of Facts.

On November 28, 2003, Lorraine Forcier (hereinafter "Lorraine") filed a Petition for Administration of Darren's estate in the Family Court. On February 6, 2004, Doris filed an Appearance and Objection, objecting to the appointment of Lorraine as Administrator. On February 10, 2004, Lorraine filed a Motion for Instructions with the Family Court seeking that the Family Court enforce the provisions of the Agreement whereby Doris waived her rights to Darren's estate and her right to act as the administrator of his estate. See Exhibit G attached to the Stipulation of Facts. On February 26, 2004, the Family Court, Gregory V. Roach, J., issued an Order on the Motion for Instructions finding that the Agreement is enforceable and that the Family Court was bound to enforce the provisions of the agreement striking Doris' appearance and objection. See Exhibit H attached to the Stipulation of Facts. As a result, Lorraine was

appointed Administratrix of Darren's estate on April 13, 2004. See Exhibit I attached to the Stipulation of Facts.

On May 1, 2004, Lorraine submitted a claim form and letter of instruction to MetLife requesting that the life insurance proceeds be distributed to Darren's mother, father and sister. MetLife acknowledged receipt of the claim on May 14, 2004. See Exhibit J attached to the Stipulation of Facts. On June 24, 2004, Doris filed a Claim Form with MetLife to receive the life insurance proceeds as Darren's wife. See Exhibit K attached to the Stipulation of Facts.

On July 21, 2004, Lorraine filed a Complaint in the Family Court seeking reformation of the life insurance policy so that the proceeds would be paid to Darren's estate and not to Doris. The Complaint named MetLife and Doris as defendants. MetLife removed the case to this Court on August 19, 2004 and on March 16, 2005 this Court granted MetLife's request to pay the proceeds of the life insurance policy into court. This Court also granted Lorraine's Motion to Amend the Complaint to a Complaint for Declaratory Judgment seeking an order that the proceeds be distributed to Darren's estate. On April 7, 2005 Doris filed an Answer and Counterclaim for Declaratory Judgment seeking an order that the proceeds be paid to Doris.

## ARGUMENT

Darren's life insurance proceeds should be paid to his estate and not to Doris since there is no designated beneficiary of the proceeds, the MetLife insurance policy allows payment of the proceeds to Darren's estate and, Darren and Doris entered into an Agreement as part of their divorce action pursuant to which they terminated their financial relationship and divided their real and personal property without providing Doris rights to Darren's life insurance. Additionally, the Family Court has already held that the Agreement is enforceable, even though the divorce action was abated by Darren's death, based on the public policy of Massachusetts

which favors enforcement of complete and permanent separation agreements entered into freely by parties involved in divorce actions even if the divorce action is not completed.

Massachusetts common law compelling the enforcement of separation agreements, such as the one Doris and Darren executed during the course of their divorce action, must be applied to the pending dispute as there is no federal law upon which this Court can rely to resolve the dispute. The Employee Retirement Income Security Act (hereinafter "ERISA"), the applicable federal statute upon which MetLife relied in removing the dispute to this Court, does not govern disputes between claimants to life insurance proceeds. If Darren had maintained a beneficiary designation, ERISA would clearly require distribution pursuant to the employee plan documents. Egelhoff v. Egelhoff, 532 U.S. 141, 147 (2001), *citing* ERISA at § 1104(a)(1)(D). However, without a plan designation or clearly defined beneficiary allocation by the MetLife policy, this Court should turn to the provisions of the Agreement to resolve the dispute since Darren and Doris had settled all of their financial issues in the Agreement, they had completely terminated their financial relationship by the terms of the Agreement, the Agreement does not award Doris any portion of Darren's life insurance proceeds and, Doris waived her interest in her husband's estate in the Agreement.

The issue is a family law issue and the dispute should be resolved based on the Massachusetts common law regarding the enforcement of separation agreements under these circumstances. It is well established that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." Hisquierdo v. Hisquierdo, 439 U.S. 572 at 581 (1979), *citing* In re Burrus, 136 U.S. 586 (1890).

As the Family Court previously determined in the context of Lorraine's Motion for

4

Instructions, Massachusetts courts will find that an Agreement, such as the one Doris and Darren executed, is enforceable although the divorce action is abated where the equities favor enforcement, the agreement represents a complete and final termination of the parties' financial relationship, the parties enter into the agreement freely and voluntarily and, where there are no "countervailing equities" weighing against enforcement. Pavluvick v. Sullivan, 22 Mass. App. Ct. 581(1986). The Family Court relied in its Order on the facts that the parties were separated for fourteen months before the Agreement was signed and for seventeen months at the time the Family Court approved the Agreement, that Darren paid Doris Fifteen Thousand ($15,000) Dollars on May 11, 2002 as a final settlement of their division of marital property pursuant to the terms of the Agreement and, that Doris signed the Agreement freely and voluntarily even though it is notably silent on the disposition of Darren's life insurance proceeds but does includes a waiver of her inheritance rights. In addition, on October 6, 2003, the Family Court found that the marriage was irretrievably broken, that the agreement was fair and reasonable, that the Agreement made proper provisions for the disposition of marital property and, that it should survive independently of the Divorce Decree. The Family Court also noted that the facts of this case do not present any countervailing equities against enforcement of the Agreement in that Doris is in no worse a financial position if the life insurance proceeds are distributed to Darren's estate than if Darren had not died. Moreover, as the Family Court pointed out in its Order, the short term length of the marriage and the length of the parties' separation before the Agreement was signed leads to the conclusion that Darren would not have wanted Doris to inherit his life insurance proceeds before the final Divorce Decree entered. The Family Court's finding is further substantiated by Doris's own statement on the Complaint for Divorce that an irretrievable breakdown of the marriage began on May 27, 2000, just seven days after the

parties were married. Citing the Pavluvick case, the Family Court determined that such agreements, which are complete and permanent separation agreements entered into freely and voluntarily by the parties desirous of a divorce, are favored in Massachusetts and should be enforced absent "countervailing equities." Pavluvick at 584.

In the alternative, this Court should remand the case to state court for resolution since the facts do not lead to federal statutory pre-emption.

ERISA was enacted to "ensure the proper administration of pension and welfare plans." Boggs v. Boggs, 520 U.S. 833, 841 (1997). It is a comprehensive statutory scheme which requires that all employee benefit plans comply with "various reporting, disclosure and fiduciary requirements." Id. Although it includes a myriad of provisions relative to the distribution of and protection of spouses regarding pension plan benefits, there is no provision relative to the distribution of life insurance proceeds, as part of an employee plan, among competing claimants. Emard v. Hughes Aircraft Company, 153 F.3d 949 (1998). In the Emard case the Ninth Circuit Court of Appeals made a compelling argument to find that California community property laws were not pre-empted by ERISA. The Ninth Circuit reasoned that even a dispute between a designated beneficiary and a spouse could be resolved "without reference to the terms of the plan or the provisions of ERISA." Id. at 958. Although, the Supreme Court later disagreed with the Ninth Circuit's holding, the Court's rationale is instructive when applied to the facts of the dispute between Doris and Lorraine since Darren's employee plan did not maintain a beneficiary designation. Egelhoff at 146. The Ninth Circuit pointed out that Congress' intent in enacting ERISA was to "safeguard the rights of plan participants and beneficiaries as against employers, insurers and administrators of employee benefit plans" and found there existed no indication that Congress "intended to safeguard an individual beneficiary's rights to the proceeds of an ERISA

6

insurance plan as against another person claiming superior rights under state law." Emard at 958. The Ninth Circuit also noted that neither the plan administrator nor the insurance company "need be involved in the action beyond the simple matter of distributing the proceeds to the appropriate recipient or depositing them with the court." Id.

Even though ERISA's pre-emption clause at § 1144(a) states, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" the facts of the instant case are distinguishable from other ERISA pre-emption cases because the request to apply the respective state laws and policies to this dispute will not have an overarching effect on the "congressional scheme to assure the security of plan participants and their families in every State." Boggs, at 840. Nor would their application conflict with any provision of ERISA or operate to frustrate the statute's objectives. Id. at 841. In Boggs, the Supreme Court held that a state law which allowed a nonparticipant spouse to transfer by testamentary instrument an interest in a pension plan was pre-empted by ERISA. In that case, the Court determined that the survivor's annuity was one mandated by ERISA in § 1055 and that the provision's objective was to ensure a stream of income to surviving spouses. Id at 851. The court went on to discuss the fact that ERISA includes narrowly defined circumstances under which a nonparticipant spouse or dependant obtains beneficiary status of a pension plan, including the ERISA provisions relative to qualified domestic relations orders, the clear exception for qualified medical support orders, and the anti-alienation provision. Id. at 846, 847. In discussing these specific provisions, the Court emphasized that Congress chose to protect community property interests of separated and divorced spouses and their children, a traditional subject of domestic relations law, but not to accommodate testamentary transfers of pension plan benefits. Concluding that the state law claims were pre-empted, the Court held that the

Louisiana community property and succession laws create a direct "clash between state law and the provisions and objectives of ERISA". Id. at 844.

More recently, in assessing the extent of the "relate to" provision, Supreme Court stated that the court should look to the "nature of the state law's effect on ERISA plans." Egelhoff at 144, *citing* California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316 (1997) In Egelhoff, the Court determined that a Washington statute was preempted by ERISA because the law dictated the payment of employee benefits by requiring plan administrators to pay beneficiaries according to rules set out in the state statute rather than by the plan documents and that this statutory requirement "interfered with a nationally uniform plan administration." Id. at 148.

The facts of the instant case present no such direct conflict with the provisions and objectives of ERISA and Lorraine's request that the proceeds be paid to Darren's estate and not to Doris would in no way interfere with the established "nationally uniform" plan administration. Nor would resolution of the dispute require this Court to deviate from the statute's reporting, disclosure or fiduciary requirements and, since Darren did not maintain a beneficiary designation the dispute can be resolved without reference to the terms of the plan or provisions of ERISA. Finally, the dispute does not involve either the plan administrator or the life insurance company. Metlife deposited the proceeds with this Court on or about May 13, 2005.

At this Court's request, the following is the Massachusetts' statutory scheme relative to a surviving spouse's right to property not disposed of by will. If the deceased is survived by kindred but no children, and the whole estate exceeds two hundred thousand dollars in value, then the surviving spouse shall take two hundred thousand dollars and one half of the remaining personal property and one half of the remaining real property. M.G.L. c. 190 §1. However,

petitioner emphasizes to this Court the fact that the Family Court has determined that the Agreement executed by Darren and Doris in the course of their divorce action is enforceable and that Doris waived her interest in her husband's estate by the terms of that Agreement.

## CONCLUSION

Darren's life insurance proceeds should be paid to his estate and not to Doris since Darren did not maintain a beneficiary designation for the proceeds, the MetLife policy allows payment to his estate, Doris entered into an Agreement whereby she terminated her financial relationship with Darren and divided all of their marital property prior to his death and, the equities favor payment to Darren's estate given the short term, childless marriage and the length of the parties' separation before the Agreement was executed. Otherwise, the case should be remanded to the state Family Court as the facts of the case do not implicate pre-emption by the Employee Retirement Income Security Act.

Dated: June 30, 2005

LORRAINE FORCIER,
By Her Attorney,

Janet Fennell, BBO 561288
Law Offices of Neil Davis
390 Main Street, Suite 720
Worcester, MA 01608-1601
(508) 793-0939

## CERTIFICATE OF SERVICE

I, Janet Fennell, attorney for Lorraine Forcier, Administratrix of the Estate of Darren Forcer, Plaintiff/Counterclaim Defendant, hereby certify that I have served the Memorandum in Support of Complaint for Declaratory Judgment upon counsel for Doris Forcier, Defendant/Counterclaim Plaintiff, Barbara S. Liftman, at Donna J. Hines & Associates, 206 Main Street, Worcester, Massachusetts, 01608, by mailing a copy of same first class mail, postage prepaid on June 30, 2005.

_/s/ Janet Fennell_
Janet Fennell