UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LORRAINE FORCIER, Administrator of the Estate of Darren Forcier, Plaintiff/Counterclaim Defendant<br><br>v.<br><br>DORIS FORCIER, Defendant/Counterclaim Plaintiff | )<br>)<br>)<br>)  C.A. No. 04-CV-40158-FDS<br>)<br>)<br>)<br>) |

### DEFENDANT/COUNTERCLAIM PLAINTIFF DORIS FORCIER'S MEMORANDUM OF LAW

STATEMENT OF THE CASE

The plaintiff, Lorraine Forcier, Admistrator of the Estate of Darren Forcier (hereinafter "Lorraine"), commenced an action in the Commonwealth of Massachusetts Probate and Family Court in and for the County of Worcester on July 21, 2004. In that action Lorraine sought reformation of a policy of life insurance which insured the life of the plaintiff's decedent, Darren Forcier (hereinafter "Darren"). The policy had been provided to the decedent as an incident of his employment. Named as defendants in that suit were Metropolitan Life Insurance Company, the insurer (hereinafter "Metlife"), and Doris Forcier, the decedent's surviving spouse (hereinafter "Doris"). The suit was removed to this court by Metlife on August 18, 2004. On March 16, 2005 this Court allowed plaintiff's Motion to Amend the Complaint changing the cause of action from one for reformation to one for declaratory judgment. The Court on that day also allowed Metlife to deposit the insurance proceeds, $208,000.00, into the court and be dismissed from the case. Doris has filed a Counterclaim for Declaratory Judgment.

1

       acquire as spouse under the present or future laws of any jurisdiction:
- A. To elect to take against any will or codicil of the other party now on or thereafter in force;
- B. To share in the party's estate in case of intestacy; and;
- C. To act as executor administrator of the other party's estate. It is the intention of the parties that their respective estates shall be administered as though no marriage between them had ever existed. **However, nothing in this paragraph is intended to or shall constitute a waiver by either party of any testamentary provisions which the other may voluntarily make for him or her or a waiver of the Wife's rights against the Husband's estate, if any, under Article 8. The provisions of Clause (sic) shall not take effect until the final date of the divorce decree.** (emphasis added)

The Agreement was signed by the parties before notaries public on July 2, 2003. Judge King incorporated the terms of the parties' Separation Agreement into his Judgment of Divorce *Nisi* (Exhibit D) but said Agreement did not merge with the Judgment and instead survived as an independent contract not subject to modification in accordance with paragraph 17 of the Agreement.

On October 21, 2003, Darren Forcier died. The cause of Darren's death was a self-inflicted stab wound (Exhibit E). Darren's death occurred during the *nisi* period and accordingly the Judgment of Divorce *Nisi* never became absolute.

At the time of his death Darren was employed by Macromedia, Inc. As an incident of his employment, Darren had a life insurance policy with Metlife with a death benefit of two hundred eight thousand ($208,000.00) dollars (Exhibit F). The policy had no cash value. (Exhibit F, Page 7). Darren failed to designate a beneficiary for the life insurance policy. Likewise Darren did not effect a change of beneficiary at

3

any time following the execution of the parties' Separation Agreement. The policy provides, in relevant part:

> If there is no Beneficiary at your death for any amount
> of benefits payable because of your death, that amount
> will be paid to one or more of the following persons
> who survive you:
>
> 1. spouse;          3. parent:
> 2. child;           4. brother and sister.
>
> However, we may instead pay all or part of that amount to
> your estate.

On November 28, 2003, Lorraine Forcier (hereinafter "Lorraine") filed a Petition for Administration of Darren's estate in the Worcester Probate and Family Court. On February 6, 2004, Doris filed an Appearance and Objection, objecting to the appointment of Lorraine as Administrator. On February 10, 2004, Lorraine filed a Motion for Instructions with the Probate and Family Court requesting that Court's instruction on the enforceability of the Separation Agreement (Exhibit G). On February 26, 2004, the Worcester Probate and Family Court, Gregory V. Roach, J., issued an Order on the Motion for Instructions (Exhibit H). In his Order, in relevant part, Judge Roach stated the following:

> The Court entered a Judgment of Divorce Nisi, and incorpor-
> ated the Agreement into the Judgment, which survived
> independent of the Judgment. (King, J.)....
>
> In this case, Mr. Forcier died during the nisi period. A judgment
> of divorce entered nisi does not dissolve the marriage. After the
> entry of such a judgment nisi, the death of either party before
> the decree has been made absolute puts an end to the proceeding
> for divorce, and thereafter the divorce cannot be made absolute.
> (citations omitted)....
>
> The surviving spouse is entitled to statutory rights in the estate.
> (citations omitted)....

4

> Having found that the Agreement is enforceable, I am bound to enforce **the provision of the Agreement wherein Mrs. Forcier waived her rights in the estate of Mr. Forcier and waived her right to act as the administrator of his estate.... (emphasis added).**

Doris' Appearance and Objection were stricken on February 26, 2004 and Lorraine was appointed Administratrix of Darren's estate on April 13, 2004 (Exhibit H).

On May 1, 2004, Lorraine submitted a claim form and letter of instruction with requested documentation attached to MetLife requesting that the life insurance proceeds be "equally distributed to the decedent's mother, father and sister" (Exhibit J). In the Claimant's Affidavit filed with Metlife, Lorraine indicated that the decedent had been married and that the marriage had been terminated by divorce. She failed to provide the requested information about the decedent's widow, indicating instead that the requested information was "not applicable."

On June 24, 2004, Doris filed a Claim Form with Metlife to receive the life insurance proceeds, requesting that the proceeds be paid to her as the decedent's widow (Exhibit J).

On July 21, 2004, Lorraine filed a Complaint in the Worcester Probate and Family Court seeking reformation of the life insurance policy so that the proceeds would be paid to Darren's estate and not to Doris. The Complaint named Metlife and Doris as defendants. Metlife removed the case to this Court on August 19, 2004 and on March 16, 2005 this Court granted Metlife's request to pay the proceeds of the life insurance policy into court. This Court also granted Lorraine's Motion to Amend the Complaint to a complaint for declaratory judgment. On April 7, 2005 Doris filed an Answer and Counterclaim for declaratory judgment.

## APPLICABLE LAW

The Employee Retirement Income Security Act ("ERISA") applies to any employee benefit plan established or maintained by an employer. 29 U.S.C. § 1003(a). Life insurance provided by an employer to an employee constitutes such an employee benefit plan. 29 U.S.C. § 1002(1)(A).

ERISA specifically authorizes a civil suit by a beneficiary to recover benefits due him under the terms of an employee benefit plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(C).

ERISA supersedes any and all state laws insofar as they relate to any employee benefit plan covered by the statute. 29 U.S.C. 1144(a). The life insurance policy in issue is part of an employee benefit plan and falls within the scope of ERISA's coverage. See, Metropolitan Life Insurance Company v. Flinkstrom, 303 F.Supp.2d 34, 39-40 (D.Mass. 2004); Metropolitan Life Insurance Company v. Pettit, 164 F.3d 857, 860-61 (4th Cir. 1998). The determination of the beneficiary of the proceeds of an insurance policy plainly relates to an employee benefit plan and therefore ERISA preempts the application of state law on that issue. Flinkstrom, 303 F.Supp.2d at 40. Congress specifically carved an exception to ERISA preemption to give effect to state divorce decrees only insofar as they fit the definition of a Qualified Domestic Relations Order. 29 U.S.C. 1056(3); Boggs v. Boggs, 520 U.S. 833 (1997).

In resolving the issue in this case, namely deciding who is the appropriate beneficiary of the life insurance policy, this Court must look either to the language of the ERISA statute or, if that language does not provide the answer, to the body of

federal common law that interprets that statute. See, Flinkstrom, 303 F.Supp.2d at 40; Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41, 56 (1987); Firestone Tire & Rubber Company v. Bruch, 489 U.S. 101, 110 (1989).

Although there is no provision in ERISA for the resolution of conflicting claims by potential beneficiaries, ERISA mandates that a fiduciary shall administer the plan "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D), making payments to a "beneficiary" who is "designated by a participant, or by the terms of [the] plan." 29 U.S.C. § 1002(8). Where a divorce decree affects the ultimate beneficiary of a life insurance policy, it impacts the objectives of ERISA and, unless it falls within the exception for a Qualified Domestic Relations Order, is preempted by ERISA. See, Metropolitan Life Insurance Company v. Williams, 82 F.Supp.2d 1346, 1351 (M.D.Florida 1999) and cases cited therein.

ERISA is silent as to the resolution of disputes between putative beneficiaries of a life insurance policy. Metropolitan Life Insurance v. Johnson v. Smith, 297 F.3d 558, 567 (7th Cir.2002).

In fashioning the federal common law interpreting ERISA, the courts are permitted to look to the principles of state law insofar as they are not inconsistent with congressional policy concerns. Thomason v. Aetna Life Insurance Company, 9 F.3d 645, 647 (7th Cir. 1993); see also Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41, 56 (1987). The courts should be mindful of the need to ensure uniformity in ERISA jurisprudence, and of the principle that "federal common law should be consistent across the circuits." Metlife v. Johnson at 567, quoting Phoenix Mutual Life Insurance Company v. Adams, 30 F.3d 554, 564 (4th Cir.1994); New York State Conference of

7

Blue Cross & Blue Shield Plans v. Travelers Insurance Company, 115 S.Ct. 1671, 1677 (1995). The federal courts "are constrained to fashion only those remedies that are appropriate and necessary to effectuate the purposes of ERISA. United States Steel Mining Company v. District 17, United Mine Workers of America, 897 F.2d 149, 152 (4th Cir. 1990). They must keep in mind the dual purposes of ERISA: "(a) ensuring that plans and plan sponsors be subject to a uniform body of benefits law, and (b) promoting the interests of employees and their beneficiaries and protecting contractually defined benefits." Phoenix Mutual Life Insurance Company v. Adams, 30 F.3d 554, 564 (4th Cir. 1994).

## ARGUMENT

I.  The Life Insurance Proceeds Rightfully Belong to the Decedent's Surviving Spouse.

There is no dispute that because Darren died during the ninety-day *nisi* period, the divorce between Darren and Doris never became absolute and that, at the time of Darren's death, Doris was lawfully his spouse. Diggs v. Diggs, 291 Mass. 399, 401 (1935); Pine v. Pine, 323 Mass. 524 (1948). Likewise there is no dispute that Darren's employer has no record of Darren ever electing a beneficiary for his life insurance or attempting to change the beneficiary designation for his life insurance.

In ruling on the Motion for Instructions (Exhibit G) on the issue of the enforceability of the parties' Separation Agreement (Exhibit C), the state Probate and Family Court Judge found that despite Darren's death during the *nisi* period, the Agreement was enforceable in its entirety (Exhibit H). With respect to life insurance, that Agreement provided in Article 8 that "the Husband and the Wife shall keep in

8

force life insurance policies as they see fit" (Exhibit C).[2] The Agreement also provided that the provisions regarding the waiver of estate rights in no way were to be construed as a waiver of Doris' rights under Article 8, and that the estate waiver wasn't intended to take effect until the divorce became final (Exhibit C). By no stretch of the imagination does this constitute an unambiguous waiver by Doris of her rights to receive the proceeds of Darren's insurance policy. Flinkstrom, 303 F.Supp.2d at 41-42. As the parties provided that the Agreement was to survive the judgment of divorce as an independent contract (as opposed to merging with the judgment), the Agreement was not subject to modification by court order. It is well settled in Massachusetts that a court has no authority to modify the obligations voluntarily assumed by the parties to a separation agreement. Mansur v. Clark, 25 Mass.App.Ct. 618, 620, 521 N.E.2d 759, 761 (1988), citing Schillander v. Schillander, 307 Mass. 96, 98, 29 N.E.2d 686, 687 (1940); Glazer v. Silverman, 354 Mass. 177, 178, 236 N.E.2d 199, 200 (1968); Knox v. Remick, 371 Mass. 433, 435, 358 N.E.2d 432, 434 (1976); Moore v. Moore, 389 Mass. 21, 23-24, 448 N.E.2d 1255, 1256-1257 (1983).

As Darren died by his own hand, he controlled the timing of his death and he alone knew when his death would occur. The record contains no evidence of Darren's

---

[2] Even though life insurance is not an estate asset, it should be noted that the Agreement, found to be enforceable by the Probate Court, contains a waiver by Doris of her rights to take against Darren's estate. By the unambiguous language of the Agreement, which was drafted by counsel for Darren, this estate waiver was not to take effect "until the final date of the divorce decree." ERISA preempts state law as it applies to the issue of whether or not a former wife has waived her right to the proceeds of an ERISA life insurance policy. This issue must be decided under the federal common law, which clearly provides that under a divorce agreement, only an explicit waiver, "a specific termination of the rights in question" can "effectively waive a beneficiary's interest under an ERISA-regulated plan." Flinkstrom, 303 F.Supp.2d at 41, citing Melton v.Melton, 324 F.3d 941, 945 (7th Cir. 2003). Therefore, under ERISA, there has been no waiver of Doris' rights to receive the life insurance proceeds.

intent with respect to the disposition of his life insurance policy other than his failure to initiate a designation of, or change of, beneficiary prior to his suicide. Presumably Darren either had read the Metlife Policy or could have read it if he had chosen to do so and either knew, or reasonably should have known, that he was free to designate a beneficiary or rely on the default list in the policy. Reading the policy would have made Darren aware that a surviving spouse topped the hierarchy of default beneficiaries set out in the policy (Exhibit F). Read together with the parties' divorce agreement, it would have been obvious to Darren that if he did not designate a beneficiary, Doris would be the first in line to receive the proceeds of the Metlife policy upon his death.

While neither Massachusetts common law nor the federal common law interpreting various provisions of ERISA specifically address the issue of the payment of life insurance proceeds where no beneficiary has been designated, Congress has addressed the issue in great detail. Congressional policy concerns as to the payment of life insurance proceeds where no beneficiary has been designated has been addressed as that issue pertains to the federal employees' group life insurance plan known as FEGLIA. 5 U.S.C. § 8701 et seq. Under that Act, if the insured does not designate a beneficiary, then the proceeds of the life insurance policy are to be paid according to the order of precedence mandated by the statute. Section 8705 provides, in relevant part, as follows:

> (a) Except as provided in subsection (e), the amount of group life insurance...in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

10

> First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office...
>
> Second, if there is no designated beneficiary, to the widow or widower of the employee.
>
> Third, if none of the above, to the child or children of the employee...
>
> Fourth, if none of the above, to the parents of the employee...
>
> Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee.
>
> Sixth, if none of the above, to other next of kin of the employee entitled under the laws of the domicile of the employee at the date of his death....
>
> (e)(1) Any amount which would otherwise be paid to a person determined under the order of precedence named by subsection (a) shall be paid (in whole or in part) by the Office to another person **if and to the extent expressly provided for** in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation (emphasis added).
>
> (2) For purposes of this subsection, a decree, order, or agreement referred to in paragraph (1) shall not be effective unless it is received, before the date of the covered employee's death, by the employing agency....

This Court should, and must, give deference to Congressional policy concerns in establishing the federal common law interpreting ERISA. Metlife v. Johnson, at 567. Clearly it is the intent of Congress that in a case such as this where an employee dies without designating a beneficiary for his life insurance, the proceeds be paid entirely to his surviving spouse. The only exception to this rule is a divorce judgment expressly directing that the proceeds be paid to another person. No such divorce judgment exists here.

11

II.   The Plaintiff's Argument is Unsubtantiated by Law and Based Upon Erroneous Premises.

The plaintiff's entire memorandum presupposes that life insurance is both a marital asset and a probate asset. It repeatedly refers to the Separation Agreement entered into between Darren and Doris as having disposed of all of the marital assets including life insurance, and suggests that by waiving her rights to Darren's estate, Doris somehow waived her rights to the life insurance policy. Plaintiff cites no law, as there simply is no law, in support of these propositions. The Metlife policy was neither a marital asset nor is it an asset of Darren's estate because Darren had no title to the amount due on the policy nor was he entitled to such money at any time prior to his death. The right to the proceeds as an instant obligation does not spring into existence until after the insured's death. Even then the money belongs to the insurer, who is charged with the duty to pay in accordance with the contract. Tyler v. Treasurer and Receiver General, 226 Mass. 306. 309 (1917).

The plaintiff incorrectly states that where ERISA and the federal common law are silent on an issue, the court must apply state common law ("Massachusetts common law compelling the enforcement of separation agreements...must be applied to the pending dispute as there is no federal law upon which this Court can rely to resolve the dispute"). This argument not only ignores federal case law, but ignores the fact that even if the separation agreement were enforced it offers no guidance to help identify the appropriate recipient of the life insurance proceeds. The plaintiff would have this Court ignore the hierarchy of default beneficiaries spelled out in the plan, clear federal congressional policy, and Massachusetts' interest in protecting surviving spouses as enunciated in statutory and common law, and instead award the proceeds to Darren's

12

estate because 'Doris would be no worse off if she doesn't receive the proceeds than she would be if Darren hadn't died.' Plaintiff's entire argument is based upon wishful thinking and not on any sound legal reasoning. It relies on case law which has been overruled by the United States Supreme Court, and urges a result which would require this Court to ignore the unambiguous language of the plan document. To do so would destroy the ability of plan fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan without fear of liability for doing so. 29 U.S.C. § 1104(a)(1).

It is understandable that the plaintiff mourns the loss of her son and desires not to see his former wife receive a windfall, but this Court lacks the authority to award the life insurance proceeds to Darren's estate because the marriage was a short one or because the "equities favor" such a result. The ERISA provision allowing a suit by a participant, beneficiary or fiduciary to obtain "appropriate equitable relief" does not authorize equitable relief at large, but only appropriate equitable relief for the purpose of redressing any violations or enforcing any provisions of ERISA or an ERISA plan. 29 U.S.C. § 1132 (a)(3). Harris Trust and Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 120 S.Ct. 2180 (2000).

While a separation agreement may be enforceable despite the death of one of the parties during the *nisi* period, under Massachusetts law a surviving spouse may not waive her right to elect her statutory share prior to the death of her spouse. Whitney v. Closson, 138 Mass. 49 (1884) (held a wife was entitled to the share of her deceased husband's estate secured to her by statute notwithstanding an agreement between them whereby, in expectation of a separation and in consideration of money, she assumed to

13

release all claims on his estate); Vaughan v. Vaughan, 294 Mass. 164 (1936). Doris clearly did not intend such a waiver as is evidenced by the language of the Separation Agreement delaying applicability of the estate waiver until the divorce became final.

III.   No Claim Has Been Filed on Behalf of the Estate

It should not be overlooked that although the plaintiff seeks to have this Court award the life insurance proceeds to Darren's estate, no claim for the proceeds was ever made on behalf of the estate to Metlife. The only claim made against the plan by Lorraine as Administratrix of Darren's estate sought to have the proceeds paid to Darren's mother, father and sister, and not to his estate. The plan document is quite explicit that in order to receive death benefits, written notice of a claim must be furnished to Metlife. The plaintiff hopes this Court will simply overlook that no claim has ever been filed with Metlife seeking payment of the proceeds to Darren's estate.

## CONCLUSION

In passing the preemption provisions of ERISA, Congress intended

> to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government…and to prevent the potential for conflict in substantive law…requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.

<u>New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Company</u>, 115 S.Ct. 1671, 1677 (1995) quoting <u>Ingersoll-Rand Company v. McClendon</u>, 498 U.S. 133, 142 (1990).

In keeping with the Congressional policy favoring uniformity and the example set by Congress in the FEGLIA statutory scheme, it is imperative that this Court award the life insurance proceeds to Doris, the decedent's surviving spouse, the first default beneficiary identified in the plan documents. Any other result will open the floodgates to competing claims to employer-sponsored life insurance policies.

DORIS FORCIER
By her attorney

_____
Barbara S. Liftman
BBO #559448
LAW OFFICES OF DONNA J. HINES & ASSOCIATES
306 Main Street
Worcester, MA 01608
508-799-5900

## CERTIFICATE OF SERVICE

I, Barbara S. Liftman, attorney for the Defendant/Counterclaim Plaintiff, hereby certify that on this 18th day of July, 2005, I served a copy of the foregoing on all parties by mailing the same, first-class mail, postage prepaid, to: Attorney Janet Fennell, Law Office of Neil S. Davis, 390 Main Street, Worcester, MA 01608.

_____
Barbara S. Liftman